Livingston, J.
It is conceded that the right to recover cannot exist, unless the vessel, at the time of sailing on the *661 voyage insured, was seaworthy; that her not being so will affect as well an innocent shipper of goods as the owner of the vessel. This is certainly so, and however hard the law may bear on persons of this description, the underwriter is entitled to the full benefit of it, and ought not to be held to payment when this implied warranty has been violated. Whether such" has been the case is principally a question of fact, and we would not willingly disturb a verdict given against an assurer of goods on a defence of this kind, where there had been a contrariety of testimony, or where the proofs were nearly in equilibria; perhaps not, unless their decision was most manifestly against the whole bf the evidence: such we think is the case here.[1] No one who reads the testimony can hesitate in saying that the breaking up of this voyage was not occasioned by any one of the perils insured against. The Mary must, then, either not have been seaworthy when she left NTew-York, or so far decayed as to require ^repairs at an inter- [*524] mediate stage of the voyage, which it was either impracticable to give her, or which would have cost more than she would, when repaired, have sold for. In either ease the defendants are not liable. The mate does not state .particularly what injury she received from the gales she encountered, except that of making more water, for she leaked when she left the Hook; this induced the master to bear away. On her arrival at Bermuda, she is thoroughly examined and found to be in a most decayed state. This rottenness in her timbers, it is certain, could not have taken place in so short a voyage, but must have existed when she left New-York. If we give no credit to surveys(a) of this kind, which, besides being ex parte, are too easily, and *662 sometimes fraudulently, procured, we must believe the surveyors when examined under our own commission. They bear the character of respectable men, and the abandoned state of the vessel after her condemnation and purchase, is a great proof that they acted with integrity and good faith. Nothing to the contrary should be inferred from one of them becoming a purchaser. This he could not foresee would be the case in a sale at auction, and at any rate it does not appear that he made much by the bargain. The agent is also a strong witness on the same side. To all this nothing is opposed but an opinion of the mate, that she might have been repaired, and proof that the Mary was well built, and once a strong vessel. A carpenter repaired her previous to her sailing on her last voyage, but did not examine her upper works, or bore her timbers. Now all this may be true, and yet it does not, in any degree, derogate from the credit due to the witness^ who last examined her; who were in a situation to form a correct opinion, and who pursued the best and only means of coming at an accurate conclusion. It must always be difficult •te determine, with certainty, what portion of the injury is occasioned by latent defects, and what by perils of the sea ; but here it is sufficient to say, that the injuries which required repairing at Bermuda, and produced a termination of the voyage there, could not have arisen from any accident insured against, because it is expressly stated, by the witnesses, that these repairs were rendered neces[*525] sary by' the imperfect condition *of the timbers; not by her leaky condition, which was the only effect of the weather she met with. If no further defect had been discovered but a leak, this could have been repaired, and the vessel would soon have pursued her route. Our opinion is, that this is a verdict palpably against evidence, which established, beyond doubt, the innavigability " of the vessel, and that a new trial must, therefore, be had, on the payment of costs by the defendant. It is ol *663 course unnecessary to decide the other point made in thi* cause, (a)
New trial.

 See ante, p. 25, note (a).

 As they are, in general, mere reports of the state of the vessel, not given under the solemnity of an oath, and «8 parts, Lord Kenyon ruled they were not evidence of any thing but the fact of condemnation; Wright v. Barnard, 2 Esp. Rep. 700, and in The Mar. Ins. Co. v. Wilson, 3 Cranch, 187”, their conclusiveness on the state of the vessel seems doubted.

 See Dow v. Smith, ante, 34.